# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 4, 2000 Session

## JOHN M. CLINARD, ET AL. v. ROGER BLACKWOOD, ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Robertson County**
**No. 8674      Walter C. Kurtz, Judge**

---

**No. M1998-00555-SC-R11-CV - Filed May 18, 2001**

---

FRANK F. DROWOTA, III, J., concurring in part, dissenting in part.

For the reasons discussed in the majority opinion, I agree with my colleagues' adoption of Formal Opinion 89-F-118. Screening procedures, where properly implemented, are sufficient to overcome the presumption of shared confidences. Law firms should be able to rely on screening to avoid imputed disqualification. I also agree with the majority that "the Waller firm implemented a long-adopted screening policy to prevent Mr. Davis and Ms. Nicholson from accessing or communicating any information regarding the Clinard/Blackwood matter." In my view this ends the inquiry and requires reversal of the Court of Appeals. Since I find the majority's adoption of the "appearance of impropriety" standard unnecessary and unwise, I respectfully dissent.

The majority appears to take away with one hand what it gives with the other. This concerns me for two reasons. First, having held that screening is valid, and having held that the Waller firm's procedure meets ethical standards, the majority imposes an additional level of review to determine whether the presumption of shared confidences has been rebutted. This additional level of review necessarily removes some of the certainty that screening is intended to provide to the legal community. Indeed, screening is a procedure *specifically designed* to rebut the presumption of shared confidences. To hold that screening, in effect, has been applied properly *is* to hold that this presumption has been rebutted, which, in turn, is to hold that the ethical problem has been cured. That is the clear, logical assumption that underlies screening, and it is the assumption that lawyers in Tennessee have made and relied upon in adopting screening. The majority's imposition of yet another layer of review over screening procedures undercuts this reliance. Now, lawyers must not only determine how to design a proper screening procedure, and how to comply with that procedure, but also whether their properly-designed and properly-applied screening mechanism is "enough" to avoid sanction. The rules have been made more complicated, without justification in my view.

Second, the particular standard chosen to implement this additional level of review, the appearance of impropriety standard, is too imprecise to carry the weight the majority gives it. The purpose of disciplinary rules are to regulate lawyers; they tell lawyers what they can and cannot do to avoid ethical sanction. A subjective standard that "evades easy definition," as the majority states, necessarily falls short of that level of clarity lawyers should expect of ethical rules, the violation of which has significant consequences. The standard is perhaps most imprecise in that its application is governed by the "reasonable layperson" test. As stated above, lawyers have employed screening under the assumption that it is a clear and certain method of complying with the ethical rules. But it can no longer be viewed as clear and certain when a lawyer must also consider how a reasonable layperson would assess the ethical dilemma. Determining what a reasonable person thinks about lawyers moving from one firm to another is a difficult and unpredictable factual inquiry. I believe that even the most thoughtful, careful, and ethical lawyers will be unable to reach firm judgments after conducting this inquiry. Indeed, as the majority concedes, judges "may fail to find an appearance of impropriety where one would be found by a layperson." I believe that lawyers will have the same difficulty making evaluations under this standard. Where clarity is required, the Court unfortunately provides the bench and bar with uncertainty.

Finally, I wish to emphasize the majority's statement that attorney disqualification based upon the appearance of impropriety is a "drastic remedy" to be applied only in a "rare case." Since the screening procedure in this case was sufficient, and since the Waller firm adhered to that procedure, I think that the majority today goes beyond the bounds of its own characterizations. Nevertheless, I am confident that the majority's holding will be applied sparingly in future cases, given the unique circumstances of this case. As the majority describes it: "This is not a case in which a conflict resulted from an attorney's prior representation in a different, unrelated matter. Mr. Davis's firm now stands as adversary against the Blackwoods in the very litigation in which Mr. Davis once represented them and gained their confidences." Given these facts, there is reason to believe that the cases in which screening will be invalidated are indeed rare, and hopefully limited to situations in which a lawyer "switches sides" in the same case. I find it unfortunate, however, that the majority chooses to remedy an admittedly rare occurrence by adopting a holding that will lead to unnecessary confusion.

———————————————————
FRANK F. DROWOTA, III, JUSTICE

-2-